Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA  90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff and the putative class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABHI SHETH, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-01538 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| RING LLC, | |
| Defendant. | |

Plaintiff Abhi Sheth ("Plaintiff"), by and through his counsel, brings this Class Action Complaint against Defendant Ring LLC ("Ring" or "Defendant"), on behalf of himself and all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## **INTRODUCTION**

1.      This case addresses Ring's lackadaisical efforts to provide the safety and security it ostensibly promises its customers, as well as its continuous failure to respect its customers' most fundamental autonomy and privacy rights—the right to privacy in one's home—and the very principles upon which the company was built.

2.      Ring is a security and smart home company that designs, manufactures, and sells a wide range of home security devices, including motion-detecting video surveillance cameras, smart lighting, and video doorbells (collectively, "Ring Security Devices"). Since the company was founded, Ring has boldly represented that Ring Security Devices are designed to promote the safety of its customers and to protect their privacy.

3.      Despite expressly promising to provide its customers with "peace of mind" and to put its customers' "security first," Ring Security Devices actually expose the most intimate areas of customers' homes—and consequently the most private aspects of customers' lives—to unauthorized third parties through both their deliberately inadequate security measures as well as affirmative sharing of customer personal information with third parties without the customers' informed consent. Ring thus places its own profits above the sacred privacy rights of its customers.

4.      For years, Ring has known about the vulnerabilities in its systems, through customer complaints of unauthorized access to their Ring Security Devices, customers' pleas to implement more robust security measures and precautions, and news reports surfacing across the country. Nevertheless, Ring has refused to take responsibility for the vulnerabilities of Ring Security Devices or its role in compromising the privacy of its customers.

2

CLASS ACTION COMPLAINT

5. Moreover, Ring has and continues to share its customers' personal information in real time with unauthorized third parties without the customers' informed consent, further increasing the risk of unauthorized access and abuse of personal information.

6. The ramifications of unauthorized access to the highly personal details can be severe, and individuals accordingly go to great lengths to safeguard not only the privacy and sanctity of their homes, but, in the case of parents and guardians, also that of their minor children.

7. Accordingly, Plaintiff, individually and on behalf of all others similarly situated, brings this action to force Ring to respect the sacred right to privacy in one's home that is guaranteed to all Americans, by implementing appropriate security measures, stopping the sharing of information with unauthorized third parties, and compensating its customers for the past invasion of privacy.

## THE PARTIES

8. Plaintiff is a resident of Seattle, Washington. On or about June 12, 2019, Plaintiff purchased a Ring Video Doorbell from Costco for approximately $159.99.

9. Defendant is a limited liability company organized under the laws of the state of Delaware. Defendant is registered to do business in the state of California, with its place of business located at 1523 26th Street, Santa Monica, California 90404.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states different from Defendant.

11. This Court has personal jurisdiction over Defendant because it is headquartered in this District and is registered to conduct business in California.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

and omissions giving rise to this action occurred in this District.

## STATEMENT OF FACTS

13.     Ring provides its customers with integrated smart home solutions, including a range of security devices, most notably video surveillance doorbells and cameras. According to Ring, the "Ring" name "actually comes from the 'ring' of security [the company] create[s]" around its customers' homes and communities.[1]

14.     The Ring Video Doorbell is its flagship product, and through wireless technology, enables its users to monitor and control the device remotely via the user's online account or mobile phone.

15.     Ring undoubtedly recognizes the importance of maintaining its customers' privacy and security. Indeed, Ring built the Ring Video Doorbell with the goal that the device would "provide meaningful security at its core"[2] Though Ring has expanded the range of security devices it offers, the perception that Ring Security Devices increase the safety and security of its customers' homes remain unchanged.

16.     Ring Security Devices are designed to operate through a user's Wi-Fi network. Once connected, Ring Security Devices enable users to view the video stream in the device's range and use the device's microphone and speaker feature to listen and communicate with nearby occupants.

17.     However, Defendant's statements regarding the safety and security of Ring Security Devices, and consequently, of its customers' private property and personal information, are plainly untrue because—as explained below—Defendant's wholly inadequate security measures has resulted, and will continue to result, in unauthorized third-party access to its customers' Ring Security Devices.

---

[1] Jamie Siminoff, *The History Behind Ring*, RING BLOG (Sept. 26, 2014), https://blog.ring.com/2014/09/26/scrappy-dedicated-humbled-proud-and-excited-the-history-behind-ring/.

[2] *Id.*

4

18.     Despite Ring's representations that it "maintain[s] administrative, technical and physical safeguards designed to protect personal information against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use,"[3] it fails to implement entirely common and basic cybersecurity measures or protocols to guard against unauthorized access or intrusion by third parties.

19.     Unlike a wealth of other online service providers, Ring does not require its customers to use two-factor authentication (or "dual factor authentication") to access their Ring Security Devices and accounts. Further, Ring neither limits the number of unsuccseful login attempts into a user's account nor does it notify its customers of these unsuccessful or suspicious login attempts.[4] Ring also does not provide a way to see how many users are currently logged in to a single account.

20.     In addition, an investigation of the Ring smartphone app found that it was "packed with third-party trackers sending out a plethora" of customers' personally identifiable information ("PII"), with "four analytics and marketing companies discovered to be receiving information such as the names, private IP addresses, mobile network carriers, persistent identifiers, and sensor data on the devices of paying customers,"[5] further exposing class members' PII to third parties and increasing the risk of unauthorized access.

21.     For example, every time a customer opens the Ring app on his or her smartphone, the app sends information to Facebook about that customer, including "the time zone, device model, language preferences, screen resolution, and a unique identifier."[6]

---

[3] Ring Privacy Notice (Nov. 19, 2019), https://shop.ring.com/pages/privacy-notice.
[4] Joseph Cox, *We Tested Ring's Security. It's Awful*, VICE (Dec. 17, 2019), https://www.vice.com/en_us/article/epg4xm/amazon-ring-camera-security.
[5] Bill Budington, *Ring Doorbell App Packed with Third-Party Trackers*, ELECTRONIC FRONTIER FOUNDATION (Jan. 27, 2020), https://www.eff.org/deeplinks/2020/01/ring-doorbell-app-packed-third-party-trackers.
[6] Kari Paul, *Smart doorbell company Ring may be surveilling users through its app*, THE GUARDIAN (Jan. 29, 2020), https://amp.theguardian.com/technology/2020/jan/29/ring-smart-doorbell-company-surveillance-eff-report.

22.     A business analytics firm, MixPanel, receives even more sensitive PII from the Ring app, including "users' full names, email addresses, device information such as operating system (OS) version and model, whether Bluetooth is enabled, and the number of Ring devices installed."[7]

23.     Although Ring has yet to respond to these disturbing surveillance reports, Ring previously deflected blame for the poor cybersecurity issues that led to unauthorized hacking into users' Ring app and enabled strangers to spy on homeowners. After those reports surfaced late last year, Ring responded by sending its customers an email telling them they should turn on two-factor authentication.[8]

24.     While Ring continues to represent placing high value on their customers' privacy and that it places customers' "security first," Ring's actions demonstrate otherwise. Ring has attempted to absolve itself from liability by blaming its own customers for any unauthorized access to their Ring Security Devices and turning a blind eye to the inadequate security measures that made its Ring Security Devices susceptible to hacking and unauthorized access in the first place.

25.     Had Ring informed its customers that it would use inadequate security measures and permit unauthorized third-party tracking of their PII, consumers—like Plaintiff and Class members—would not have been willing to purchase Ring Security Devices at the price charged, if at all.

26.     Ring's failure to implement adequate security protocols jeopardized tens of thousands of consumers' privacy, fell well short of their promises, and diminished the value of the products and services provided. In other words, because Defendant failed to disclose their gross security inadequacies, and affirmatively shared customers' information with third

---

[7] *Id.*

[8] Kim Lyons, *Why Ring can't just blame users for those home-invading camera 'hacks': It's surprisingly easy to access someone's Ring camera if their password was breached*, THE VERGE (Dec. 18, 2019), https://www.theverge.com/2019/12/18/21028092/amazon-ring-camera-hack-password-security-privacy-access-2fa.

CLASS ACTION COMPLAINT

parties without their informed consent, they delivered fundamentally less useful and less valuable products and services than those for which consumers like Plaintiff paid.

27.     Ring failed to assess reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of its customers' PII and other private information. Defendant's failures include, *inter alia*, the failure to implement basic safeguards to protect the security, confidentiality, and integrity of consumer information as well as the affirmative sharing of PII with unauthorized third parties.

28.     Ring's handling of its customers' information is particularly egregious not just because Ring markets its products as home security devices which are supposed to make its customers feel safer, but also because the company is worth billions and undoubtedly has the resources to implement relatively cheap, better security measures but chooses not to do so, such as two-factor authentication. Based on consultation with experts, Plaintiff suspects that Ring refuses to implement simple and relatively cheap security measures so as to make it easier to affirmatively share customers' PII with third parties, such as Facebook and MixPanel.

29.     "A Ring account is not a normal online account. Rather than a username and password protecting messages or snippets of personal information, such as with say, a video game account, breaking into a Ring account can grant access to exceptionally intimate and private parts of someone's life and potentially puts their physical security at risk."[9]

30.     The implications of Ring's failures are substantial, given the breadth of private and personal information supposedly protected, but now jeopardized, by Ring and its unsecure products and services.

31.     Private information, including PII, is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. As a result of recent large-scale data

---

[9] *Supra* note 4.

CLASS ACTION COMPLAINT

breaches, identity thieves and cyber criminals have openly posted stolen PII directly on various Internet websites making the information publicly available.

32.  While Ring's wrongful conduct constitutes invasion of privacy in and of itself, entitling consumers to damages, Plaintiff and Class members are also now placed at an increased risk of further imminent harm as a direct result of Ring's wrongful acts and omissions.

## **CLASS ALLEGATIONS**

33.  Plaintiff seeks relief in his individual capacity and on behalf of all others who are similarly situated.  In accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Nationwide Class initially defined as follows:

> All persons residing in the United States who purchased a Ring Security Device within the applicable statute of limitations period.

34.  Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiff reserves the right to expand, limit, modify, or amend the proposed Class definition before the Court determines whether certification is appropriate.

35.  The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons.

36.  <u>Numerosity</u>. Although the exact number of Class members is uncertain, and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable, believed to amount to many thousands of persons. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. Information concerning the exact size of the putative class is within the possession of Defendant. The parties will be able to identify each member of the Class after Defendant's document production and/or related discovery.

CLASS ACTION COMPLAINT

37.    <u>Commonality</u>. Common questions of fact and law exist as to all Class members and predominate over any questions that affect only individual Class members, including by example only and without limitation, the following:

a.    whether Defendant failed to adequately safeguard Plaintiff's and Class members' property, including their private and personal information;

b.    whether Defendant failed to protect or otherwise keep Plaintiff's and Class members' homes, including their private and personal information secure, as promised;

c.    whether Defendant's collection and storage of Plaintiff's and Class members' private and personal information in the manner alleged violated federal, state and local laws, or industry standards;

d.    whether Defendant engaged in unfair or deceptive practices by failing to properly safeguard Plaintiff's and Class members' homes and private and personal information as promised;

e.    whether Defendant violated the consumer protection statutes applicable to Plaintiff and members of the Class;

f.    whether Defendant acted negligently in failing to properly safeguard Plaintiff's and Class members' homes and private and personal information;

g.    whether Defendant's acts and practices complained of herein amounts to egregious breaches of social norms; and

h.    The nature of the relief, including equitable relief, to which Plaintiff and Class members are entitled.

38.    <u>Typicality</u>. All of Plaintiff's claims are typical of the claims of the proposed Class they seek to represent in that: Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Class claims; Plaintiff's claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances; there is no antagonism between the interests of Plaintiff and absent Class members; the injuries that Plaintiff suffered are similar to the injuries that Class members

have suffered.

39.   <u>Adequacy</u>. Plaintiff will fairly and adequately represent the Class in that: (1) there is no conflict between Plaintiff's claims and those of other Class members; (2) Plaintiff has retained counsel who are skilled and experienced in class actions and who will vigorously prosecute this litigation; and (3) Plaintiff's claims are typical of the claims of Class members.

40.   <u>Predominance</u>. The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members.

41.   <u>Superiority</u>. The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member. Absent a class action, the majority of Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

42.   Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Varying adjudications could establish incompatible standards with respect to: whether Defendant's ongoing conduct violates the claims alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

CLASS ACTION COMPLAINT

## FIRST CAUSE OF ACTION
### Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1
### (*On Behalf of Plaintiff and the Nationwide Class*)

43.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.   Plaintiff and Class members have a legally protected privacy interest in their homes, as well as the private and personal information that is transferred to or recorded by Ring security devices, and are entitled to the protection of their property and information against unauthorized access.

45.   Plaintiff and Class members reasonably expected that their Ring Security Devices would be protected and secure from unauthorized parties, and that their private and personal information would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

46.   Defendant unlawfully invaded the privacy rights of Plaintiff and Class members by (a) failing to adequately secure their private and personal information from disclosure to unauthorized parties for improper purposes; (b) disclosing their private, and personal information to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their private and personal information to unauthorized parties without the informed and clear consent of Plaintiff and Class members. This invasion into the privacy interest of Plaintiff and Class members is serious and substantial.

47.   In failing to adequately secure Plaintiff's and Class members' most private and personal information, Defendant acted in reckless disregard of their privacy rights. Defendant knew or should have known that their substandard security measures are highly offensive to a reasonable person in the same position as Plaintiff and Class members.

48.   Defendant violated Plaintiff's and Class members' right to privacy under California law, including, but not limited to, Article 1, Section 1 of the California Constitution and the California Consumer Privacy Act.

49.   As a direct and proximate result of Defendant's unlawful invasions of privacy, Plaintiff's and Class members' private, personal, and confidential information has been accessed or is at imminent risk of being accessed, and their reasonable expectations of

privacy have been intruded upon and frustrated. Plaintiff and proposed Class members have suffered injuries as a result of Defendant's unlawful invasions of privacy and are entitled to appropriate relief.

50.     Plaintiff and Class members are entitled to injunctive relief as well as actual and punitive damages.

## SECOND CAUSE OF ACTION
### Negligence
### (*On Behalf of Plaintiff and the Nationwide Class*)

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Defendant marketed and sold Ring Security Devices to Plaintiff and Class members with full awareness of the purposes for which Ring Security Devices were being used, as well as the highly sensitive nature of the property and information Ring Security Devices were designed to safeguard.

53.     Defendant owed a duty to Plaintiff and Class members arising from the sensitivity of Plaintiff's and Class members' information and privacy rights Ring Security Devices were designed to secure and protect, to exercise reasonable care in safeguarding such information and privacy rights. This duty included, among other things, designing, maintaining, implementing, monitoring, testing, and complying with reliable security systems, protocols, and practices to ensure that Plaintiff's and Class members' Ring Security Devices were adequately secured from unauthorized access, and not disclosing their private and personal information to unauthorized parties without the informed and clear consent.

54.     Defendant breached its duties by, among other things, (1) failing to implement and maintain reasonable security protections and protocols, and (2) knowingly sharing and/or selling customers' PII to third parties for analytics and marketing purposes without adequate disclosure to and consent from its customers.

55.     But for Defendant's breaches of its duties, Plaintiff's and Class members' Ring Security Devices would be protected from unauthorized access, and Plaintiff's and Class members' homes, private and personal information, and privacy rights would not have been compromised and/or obtained by third parties without consent.

56. Plaintiff and Class members were foreseeable victims of Defendant's wrongful conduct complained of herein. Defendant knew or should have known that its failure to implement reasonable protocols to adequately secure its customers' Ring Security Devices and restrict third-party access to customers' PII would cause damages to Plaintiff and Class members.

57. As a result of Defendant's negligent and/or willful failures, Plaintiff and Class members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of unauthorized access to their homes and private and personal information, fraud, theft, and other financial harm. Plaintiff and Class members must more closely monitor their homes and private and personal information. Plaintiff and Class members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining additional protective measures to prevent unauthorized access to their homes and private and personal information. The unauthorized access to Plaintiff's and Class members' private and personal information also has diminished the value of that information.

58. The damages to Plaintiff and Class members were a proximate, reasonably foreseeable result of Defendant's breaches of its duties.

59. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability
### (*On Behalf of Plaintiff and the Nationwide Class*)

60. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61. Ring is in the business of designing, manufacturing, marketing, advertising, warranting, and selling home security systems. Defendant impliedly warranted to Plaintiff and Class members that Ring Security Devices were of certain quality, free from defects, fit for the ordinary purpose of securing information and maintaining the safety of its customers.

62. Ring Security Devices are unfit for ordinary use and not of merchantable quality as warranted by Defendant because Ring Security Devices are not secure and can

(and have been) easily be accessed by unauthorized third parties.

63.     Prior to purchase, Plaintiff and Class members could not have readily discovered that Ring Security Devices were not merchantable for use to secure and protect Plaintiff's and Class members' homes and their private and personal information.

64.     Defendant has continually failed to provide adequate remedies under this implied warranty. Defendant's continuous failure to do so has caused this implied warranty to fail of its essential purpose, thereby permitting remedies under this implied warranty.

65.     Defendant had unequal bargaining power and misrepresented Ring Security Devices' reliability and performance properties, and the limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations of Ring Security Devices' performance.

66.     As a result of Defendant's breaches of this implied warranty, Plaintiff and Class members suffered damages, injuries in fact and ascertainable losses.

67.     Accordingly, Plaintiff, on behalf of himself and members of the Class, seek an order declaring that Defendant's conduct constituted breaches of the implied warranty of merchantability, and awarding them damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**Breach of Implied Contract**
(***On Behalf of Plaintiff and the Nationwide Class***)

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     Defendant provided Ring Security Devices to Plaintiff and members of the Class. In exchange, Defendant received benefits in the form of monetary payments.

70.     Defendant has acknowledged these benefits and accepted or retained them.

71.     In using Ring Security Devices, Plaintiff and Class members continually provide Defendant with their most private and personal information.

72.     By providing that information, and upon Defendant's acceptance of that information, Plaintiff and Class members, on the one hand, and Defendant, on the other, entered into implied contracts whereby Defendant agreed to and was obligated to take

14

reasonable steps to secure and safeguard that sensitive information. Such safeguarding was integral and essential to Defendant's entire line of business, home security.

73.   Under those implied contracts, Defendant was obligated to provide Plaintiff and Class members with Ring Security Devices that were suitable for their intended purpose of providing security, rather than security devices vulnerable to unauthorized access, incapable of providing safety and security, and instead actually utilized to track its users' PII for commercial purposes.

74.   Without such implied contracts, Plaintiff and Class members would not have paid for Ring Security Devices and would not have conferred benefits on Defendant, but rather chosen alternative security devices that did not present these privacy and safety risks.

75.   Plaintiff and Class members fully performed their obligations under these implied contracts.

76.   As described throughout, Defendant did not take reasonable steps to safeguard Plaintiff's and Class members' private property and information. In fact, Defendant willfully violated those privacy interests by tracking and disclosing its customers' PII to third parties without consent.

77.   Because Defendant failed to take reasonable steps to safeguard Plaintiff's private property and information, Defendant breached its implied contracts with Plaintiff and Class members.

78.   Defendant's failure to fulfill its obligation to safeguard Plaintiff's and Class members' private property and information resulted in Plaintiff and Class members receiving security devices that were of less value than they paid for (*i.e.*, unsecure devices without adequate security).

79.   Stated otherwise, because Plaintiff and Class members paid for secure devices and privacy protections they did not receive—even though such protections were a material part, if not the very essence, of their contracts with Defendant—the full benefit of their bargain.

80.   As a result of Defendant's conduct, Plaintiff and members of the Class have

suffered actual damages in an amount equal to the difference in the value of the security devices they paid for and the unsecure devices they received.

81. Accordingly, Plaintiff, on behalf of himself and Class members, seeks an order declaring that Defendant's conduct constitutes breach of implied contract, and awarding them damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
#### (*On Behalf of Plaintiff and the Nationwide Class*)

82. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83. Defendant received a benefit from Plaintiff and Class members in the form of payments for Ring Security Devices.

84. Those benefits received by Defendant were at the expense of Plaintiff and Class members.

85. The circumstances alleged herein are such that it would be unjust for Defendant to retain the portion (if not the entirety) of Plaintiff's and Class members' payments that should have been earmarked to provide secure and reliable security devices, and adequate privacy and security procedures and safeguards for Plaintiff's and the Class' private property and information, including only third-party sharing as authorized by its customers.

86. Plaintiff and the Class seek disgorgement of Defendant's ill-gotten gains.

## SIXTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200, *et seq.*
#### (*On Behalf of Plaintiff and the Nationwide Class*)

87. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

89. Defendant engaged in unfair, fraudulent, and unlawful business practices in connection with its provision of Ring Security Devices, in violation of the UCL.

90.     As alleged herein, Defendant expressly represented to consumers such as Plaintiff and Class members, among other things: that Ring Security Devices were secure; and that Defendant would maintain adequate security practices and procedures to protect Plaintiff's and Class members' private property and information from unauthorized access. Defendant also omitted or concealed the material fact of its inadequate privacy and security measures, and failed to disclose to Plaintiff and Class members that it failed to meet legal and industry standards for the protection of Ring Security Devices and consequently, its customers' private property and information. Defendant also concealed its commercial tracking and sharing of customers' PII with third parties.

91.     The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

92.     Defendant violated the "unlawful" prong of the UCL by violating, *inter alia*, Plaintiff's and Class members' constitutional rights to privacy and state consumer protection statutes, such as Washington's Consumer Protection Act and Article 1, Section 1 of the California Constitution.

93.     Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct described herein.

94.     By exposing, compromising, and willfully sharing and/or selling Plaintiff's and Class members' private property and personal information without authorization, Defendant engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

95.     A reasonable person would not have agreed to purchase Ring Security Devices had he or she known the truth about Defendant's practices alleged herein. By withholding

material information about its practices, Defendant was able to convince customers to use Ring Security Devices and to entrust their highly personal information to Defendant. Accordingly, Defendant's conduct also was "fraudulent" within the meaning of the UCL.

96.     As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief.

97.     As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, as detailed above. Plaintiff requests that the Court issue sufficient equitable relief to restore Plaintiff and Class members to the position they would have been in had Defendant not engaged in unfair competition.

## SEVENTH CAUSE OF ACTION
### Violation of the California Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750, *et seq.*
### (*On Behalf of Plaintiff and the Nationwide Class*)

98.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99.     California's Consumers Legal Remedies Act ("CLRA") has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes. The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

100.    Defendant is a "person" as defined by Civil Code Section 1761(c), because it is a limited liability company, as set forth above.

101.    Plaintiff and Class members are "consumers" within the meaning of Civil Code Section 1761(d).

102.    Ring Security Devices purchased by Plaintiff and the Class constitute "goods" and within the meaning of Cal. Civ. Code § 1761(a).

103.    Defendant's sale of Ring Security Devices to Plaintiff and the Class constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

CLASS ACTION COMPLAINT

104. Plaintiff and Class members purchased Ring Security Devices from Defendant stores for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

105. Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the conduct at issue occurred in this District. An affidavit establishing that this Court is the proper venue for this action is attached below.

106. As described herein, Defendant's practices constitute violations of California Civil Code Section 1770 in at least the following respects:

a. In violation of Section 1770(a)(5), Defendant misrepresented that Ring Security Devices had characteristics, benefits, or uses that they do not have (being private and secure from unauthorized third-party access when in fact they are not);

b. In violation of Section 1770(a)(7), Defendant misrepresented that Ring Security Devices were of a particular standard, quality, and/or grade when they were of another (being private and secure from unauthorized third-party access when in fact they are not);

c. In violation of Section 1770(a)(9), Defendant advertised Ring Security Devices with an intent not to sell them as advertised (advertising them as being private and secure from unauthorized third-party access when in fact they are not);

d. In violation of Section 1770(a)(16), Defendant misrepresented that Ring Security Devices were supplied in accordance with previous representations when they were not (that they are private and secure from unauthorized third-party access when in fact they are not).

107. Defendant's misrepresentations regarding Ring Security Devices were material to Plaintiff and Class members because a reasonable person would have considered them important in deciding whether or not to purchase Ring Security Devices.

108. Plaintiff and Class members relied upon Defendant's material misrepresentations and would have acted differently had they known the truth.

109. As a direct and proximate result of Defendant's material misrepresentations, Plaintiff and Class members have been irreparably harmed.

110.   In accordance with Cal. Civ. Code § 1782(a), prior to the filing of this Complaint, Plaintiff's counsel served Defendant with notice of these CLRA violations by certified mail, return receipt requested.

111.   On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and to engage in a corrective advertising to alert consumers of these misrepresentations. If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CLRA violations.

### EIGHTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act,**
**Cal. Civ. Code § 1798.100, *et seq.***
**(*On Behalf of Plaintiff and the Nationwide Class*)**

112.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

113.   California's Consumer Privacy Act ("CCPA") recently was enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

114.   Through the above-detailed conduct, Defendant violated the CCPA by, *inter alia*, collecting and using personal information without providing consumers with notice consistent with the CCPA, in violation Civil Code § 1798.100(b), and failing to provide notice to consumers of their right to opt-out of Defendant's sale of their personal information to third parties, in violation of Civil Code § 1798.120(b).

115.   In accordance with Cal. Civ. Code § 1798.150(b), prior to the filing of this Complaint, Plaintiff's counsel served Defendant with notice of these CCPA violations by certified mail, return receipt requested.

116.   On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from continuing to violate the CCPA. If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above, Plaintiff

also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CCPA violations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully requests that the Court enter a judgment in his favor and against Defendant, as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing and his Counsel to represent the Class;

B. Finding Defendant's conduct was unlawful as alleged herein;

C. Enjoining Defendant from engaging in the wrongful conduct complained of herein;

D. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E. Awarding Plaintiff and Class members actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

F. Awarding Plaintiff and Class members costs of suit and attorneys' fees, as allowable by law; and

G. Granting such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury of all issues so triable.

Respectfully submitted,

Dated:  February 18, 2020
/s/ Tina Wolfson
Tina Wolfson
Robert Ahdoot
Theodore W. Maya
Bradley K. King
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA  90024
Tel: (310) 474-9111; Fax: (310) 474-8585

*Counsel for Plaintiff and the putative class*

21

CLASS ACTION COMPLAINT

## **AFFIDAVIT OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff in this action. I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Venue is proper in this Court because Plaintiff suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant (1) is authorized and registered to conduct business in this District, (2) has intentionally availed itself of the laws and markets of this District through the distribution and sale of its merchandise in this District, and (3) is subject to personal jurisdiction in this District.

3.      Plaintiff Abhi Sheth is a resident of Seattle, Washington.

4.      Defendant Ring LLC is a Delaware limited liability company with its place of business at 1523 26th Street, Santa Monica, California 90404. Defendant is registered and authorized to conduct business and regularly conducts business in the State of California.

I declare under penalty of perjury under the laws of the United States and the State of California this 18th day of February, 2020 in Los Angeles, California that the foregoing is true and correct.


  _/s/ Tina Wolfson_
Tina Wolfson

CLASS ACTION COMPLAINT